UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO:

CITY NATIONAL BANK OF FLORIDA,

    Plaintiff,

v.

LOUISIANA APPLE, LLC, a Louisiana limited
liability company; MOUNTAIN APPLE, LLC,
a Louisiana limited liability company;
KENTUCKY APPLE, LLC, a Louisiana limited
liability company; and OKLAHOMA APPLE,
LLC, a Louisiana limited liability company,

    Defendants.
_____/

## VERIFIED COMPLAINT

Plaintiff, City National Bank of Florida ("CNB" or "Plaintiff"), sues Defendants, Louisiana Apple, LLC, Mountain Apple, LLC, Kentucky Apple, LLC, and Oklahoma Apple, LLC (collectively, the "Defendants"), jointly and severally, and states:

## PARTIES, RELEVANT NON-PARTIES, JURISDICTION AND VENUE

1. This is a diversity action against Defendants for damages in excess of $75,000.00, exclusive of interest, fees and costs, arising in connection a loan that was made by CNB under the Federal Reserve's "Main Street Lending Program"[1] pursuant to the terms of certain Loan Documents (as defined below) executed and delivered by the Defendants to and in favor of CNB.

2. Plaintiff CNB is a national banking association domiciled in Florida, and doing business in Miami-Dade County, Florida.

---

[1] https://www.federalreserve.gov/monetarypolicy/mainstreetlending.htm

3. Defendant Louisiana Apple, LLC ("Louisiana" and/or "Borrower") is a Louisiana limited liability company with its principal place of business in Gonzales, Louisiana.

4. Louisiana has three members: (i) Seenu G. Kasturi ("Kasturi"), (ii) William Leopold ("W. Leopold"), and (iii) Rosalyn Leopold ("R. Leopold").

5. Kasturi is a citizen of the State of Louisiana and resides in Lafayette, Louisiana.

6. W. Leopold and R. Leopold (together, the "Leopolds") are citizens of the State of Texas and reside in Montgomery, Texas.

7. Based upon the domicile of Kasturi and the Leopolds, Louisiana is domiciled in the State of Louisiana and the State of Texas.

8. Defendant Mountain Apple, LLC ("Mountain") is a Louisiana limited liability company with its principal place of business in Gonzales, Louisiana. Mountain conducts business in the States of Indiana and the State of Arizona.

9. Defendant Kentucky Apple, LLC ("Kentucky") is a Louisiana limited liability company with its principal place of business in Gonzales, Louisiana. Kentucky conducts business in the State of Kentucky.

10. Defendant Oklahoma Apple, LLC ("Oklahoma") is a Louisiana limited liability company with its principal place of business in Gonzales, Louisiana. Oklahoma conducts business in the State of Oklahoma.

11. Louisiana is the sole member, and managing member, of Mountain, Kentucky, and Oklahoma.

12. Mountain, Kentucky, and Oklahoma are wholly owned subsidiaries of Louisiana, therefore, Mountain, Kentucky, and Oklahoma are domiciled in the State of Louisiana and the State of Texas.

13. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §1332.

14. This Court has personal jurisdiction over each Defendant pursuant to Federal Rule of Civil Procedure 4(k)(1)(a) because this is an action for breach of contract for failure by the Defendants to make payments on a loan to Plaintiff in Florida and because the written contract upon which this action is based: (1) contains provisions whereby the Defendants agreed that the courts of Miami-Dade County, Florida are vested with exclusive personal jurisdiction over the Defendants for this action and consented to the exercise of such jurisdiction; and (2) contains a Florida choice of law provision.

15. Pursuant to 28 U.S.C. §1391(b), venue is proper in the Southern District of Florida because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, specifically in Miami-Dade County, Florida.

## FACTUAL BACKGROUND

16. On September 18, 2020, CNB made a loan to Louisiana in the original principal amount of $7,132,100.00.  In connection therewith, Louisiana executed and delivered to CNB that certain Promissory Note (Main Street Priority Loan Facility) (the "Note").  A true and correct copy of the Note is attached hereto as **Exhibit A**.

17. As security for the Note, on September 18, 2020, Louisiana executed and delivered to CNB that certain Loan and Security Agreement (Main Street Priority Loan Facility) (the "Security Agreement"). A true and correct copy of the Security Agreement is attached hereto as **Exhibit B**.

18. Pursuant to the terms of the Security Agreement, the Note is secured by a lien and security interest on all of the assets of Louisiana (the "Louisiana Collateral").  CNB perfected its

lien and security interest on the Louisiana Collateral by filing a UCC-1 financing statement (the "Louisiana UCC"), a copy of which is attached hereto as **Exhibit C.**

19. Louisiana breached the terms of the Note and the Security Agreement by failing to make payments due thereunder since on or about July 28, 2023.

20. On February 26, 2024, Louisiana, Mountain, Kentucky, and Oklahoma (collectively, the "Loan Parties") entered into that certain Forbearance and Loan Modification Agreement (the "Forbearance Agreement") with CNB. A true and correct copy of the Forbearance Agreement is attached hereto as **Exhibit D**.

21. Pursuant to Recital C of the Forbearance Agreement, the Defendants conceded that certain events of default existed under the Note and the Security Agreement as of the date thereof. In addition, pursuant to Section 14 of the Forbearance Agreement, the Loan Parties agreed that they "have no defenses, counterclaims, offsets, cross-complaints, causes of action, rights, claims or demands of any kind or nature whatsoever…" under the Loan Documents "that can be asserted either to reduce or eliminate all or any part of the Obligations, or to seek affirmative relief or damages of any kind or nature from the Lender or any of the Lender Parties."

22. Pursuant to the terms of the Forbearance Agreement, CNB agreed to forbear exercising its rights and remedies under the Note and the Loan Agreement in respect of the then existing events of default.

23. In addition, pursuant to the terms of the Forbearance Agreement, Mountain, Kentucky, and Oklahoma each (i) agreed to be jointly and severally liable with Louisiana for all obligations due under the Note and the Security Agreement, and (ii) granted a lien and security interest in all of their assets to CNB to secure their obligations thereunder (the "Subsidiary Collateral" and together with the Louisiana Collateral, the "Collateral").

24. CNB perfected its lien and security interest on the Subsidiary Collateral by filing a UCC-1 financing statement against each of Mountain, Kentucky and Oklahoma (the "Additional UCCs"), copies of which is attached as **Exhibit E.** The Note, the Security Agreement, the Louisiana UCC, the Forbearance Agreement, the Additional UCCs and any and all other documents entered into by the Loan Parties and CNB in connection therewith are referred to herein as the "Loan Documents."

25. At the time the Loan Parties entered into the Forbearance Agreement, they owned and operated fourteen (14) Applebee's® restaurants in the states of Kentucky, Oklahoma, Indiana, and Arkansas (the "Restaurants").

26. On May 26, 2024, CNB's obligation to forbear from exercising its rights and remedies under the Note and Security Agreement expired pursuant to the terms of the Forbearance Agreement. Moreover and since then, the Defendants have failed and refused to make any payments due under the Note.

27. In addition to the above referenced defaults, on July 1, 2024, the Loan Parties were sued by Applebee's Franchisor, LLC ("Applebee's") in the United States District Court for the District of Kansas (the "Kansas Litigation"), wherein Applebee's alleged, among other things, that it terminated the franchise agreements with certain of the Loan Parties for the operation of the Restaurants and that the Loan Parties owed amounts to Applebee's in connection therewith. On August 6, 2024, the Kansas Litigation was administratively closed because Applebee's and the Loan Parties entered into a settlement agreement on or about July 10, 2024.

28. On or about July 7, 2024, Applebee's and/or its affiliates purported to exercise certain rights under its franchise agreements with the Loan Parties by causing each of the landlords who were leasing the Restaurants to the Loan Parties (which leases were not in monetary default)

to assign those leases to an affiliate of Applebee's. Immediately thereafter, Applebee's assigned such leases to SBG Apple Central, I, LLC and thirteen of its affiliates (collectively, the "SBG Entities"), which SBG Entities are not affiliated with any of the Loan Parties.

29. Simultaneously with the assignment of such leases to the SBG Entities, the Loan Parties entered into a certain Cooperation Agreement, dated July 11, 2024, with the SBG Entities, which Cooperation Agreement provides for, among other things, the transfer of full control over the assets of the Loan Parties as well as the operation of the Restaurants.

30. Based on the terms of the Cooperation Agreement and related documents, the SBG Parties did not purchase, or pay anything for, either the assets of the Loan Parties that they took control of or the operations of the Restaurants, including the positive cash flow generated by the Restaurants. Rather, the SBG Entities have been operating the Restaurants since approximately July 11, 2024, including continuing to use, divert and dissipate the Collateral of CNB in connection therewith without CNB's consent. Moreover, the SBG Entities appear to have sold the inventory Collateral of CNB and collected the accounts receivables upon which CNB has a first priority lien and have diverted the proceeds thereof for their own use, all in violation of CNB's rights in connection therewith.

31. In addition to the above defaults, the transactions between the Loan Parties and the SBG Entities violated the Loan Documents because the Security Agreement provides, among other things, that "[t]he Borrower shall not sell, assign (by operation of law or otherwise), license, lease or otherwise dispose of, or grant any option with respect to any of the Collateral."

32. As a result of the above, CNB exercised its right to accelerate all amounts due and owing under the Loan Documents. Specifically, on August 16, 2024, CNB sent a default,

acceleration and demand letter to the Loan Parties (the "Demand Letter"). A true and correct copy of the Demand Letter is attached hereto as **Exhibit F**.

33. Pursuant to the Demand Letter, the Loan Parties are indebted to CNB as of August 15, 2024 in an amount equal to $8,330,741.65, inclusive of principal, interest and late fees, but excluding legal fees (the "Debt"), which Debt is now immediately due and payable to CNB.

34. All conditions precedent to bringing this action either have been satisfied or waived.

35. Plaintiff has retained undersigned counsel to bring this action and is obligated to pay a reasonable fee for their services.

## COUNT I
## BREACH OF CONTRACT

36. This is an action against Defendants, jointly and severally, for breach of contract in which the damages exceed $75,000.00 exclusive of interest and costs.

37. CNB realleges and incorporates paragraphs 1 through 35, above, as though fully set forth herein.

38. CNB and the Defendants were, at all times material hereto, parties to their respective Loan Documents.

39. Pursuant to the terms of the Note and the Security Agreement, CNB loaned $7,132,100.00 to Louisiana on or about September 18, 2020, and Louisiana agreed to repay such loan pursuant to the terms thereof.

40. Pursuant to the Forbearance Agreement, each of Mountain, Kentucky and Oklahoma agreed to be jointly and severally liable with Louisiana for all amounts owed under the Loan Documents.

41. The Defendants have defaulted on and remain in default of their obligations under the Loan Documents.

42. As of August 15, 2024, the total amount due and owing by the Defendants pursuant to the Loan Documents is $8,330,741.65, inclusive of principal, interest, and late fees, but excluding legal fees and costs and other amounts due under the Loan Documents.

43. The Defendants have failed and refused to pay the amounts due under the Loan Documents.

44. As a direct and proximate result of Defendants' continued default, CNB has suffered damages within the jurisdiction of this Court for which Defendants are jointly and severally liable under the Loan Documents.

45. Pursuant to Recital I of the Note and Section 3 of the Security Agreement, CNB is entitled to reasonable attorneys' fees and costs in connection with the enforcement of the terms of the Loan Documents.

WHEREFORE, City National Bank of Florida demands judgment against the Defendants, jointly and severally, for damages in excess of $8,330,741.65, together with interest, attorney's fees and costs, and for any other and further relief as this Court may deem just and proper.

### COUNT II
### APPOINTMENT OF RECEIVER

46. This is an action for appointment of a receiver within the jurisdiction of this Court.

47. CNB realleges and incorporates paragraphs 1 through 35, above, as though fully set forth herein.

48. Rule 66 of the Federal Rules of Civil Procedure and federal common law govern the appointment of a receiver. In addition, 28 U.S.C. § 754 provides a receiver with complete jurisdiction over all property situated in different districts.

49. Pursuant to the Loan Documents, CNB has a lien on all assets of the Loan Parties being used in connection with the operation of the Restaurants. CNB's lien on all assets of the Loan Parties grants CNB a legal right to seek appointment of a receiver.

50. Prior to July 10, 2024, the Restaurants were operated by the Loan Parties.

51. In early July 2024, the Loan Parties and the SBG Entities were parties to certain transactions that deprived CNB of its Collateral and turned over the operation and control of the Restaurants to the SBG Entities in violation of the Loan Documents, without compensation to CNB, and without the approval of CNB. Based on such transactions, CNB's Collateral has been and continues to be diverted and dissipated.

52. Between July 2, 2024, and July 10, 2024, the Loan Parties permitted Applebee's to take an assumption and assignment of the real estate leases for the Restaurants from the third-party landlords of the Loan Parties. Contemporaneously with the assumption of such real estate leases, Applebee's assigned those same real estate leases to the SBG Entities, who are now operating the Restaurants as Applebee's® branded restaurants.

53. In furtherance of the above diversion and dissipation of CNB's Collateral, the Loan Parties entered into the Cooperation Agreement with the SBG Entities, pursuant to the terms of which the SBG Entities have been using the assets of the Loan Parties and selling the inventory and collecting receivables of the Loan Parties, all of which is subject to a first lien and security interest held by CNB. The above actions were done and continue to be done without the consent or approval of CNB.

54. Based on the above acts, Louisiana has effectively turned the Restaurants over to the SBG Entities who continue to use, divert and dissipate CNB's Collateral located therein without CNB's consent, including food inventory, accounts receivables, kitchen equipment, tables,

chairs, etc., in direct contravention of the Loan Documents. Pursuant to the Cooperation Agreement, the SBG Entities have retained all of the revenues generated by the operation of the Restaurants since on or about July 11, 2024, including proceeds that constituted the Collateral of CNB in violation of CNB's rights therein.

55. CNB's Collateral, which is being used and diverted by an unauthorized third party without the consent of CNB or any consideration being paid to the Loan Parties or CNB, is at significant risk of further diversion, dissipation, waste, loss, damage, and deterioration.

56. Further, pursuant to the Loan Documents, the revenue generated from the operations of the Restaurants, including from the sale of inventory and the collection of accounts receivables, is also CNB's Collateral ("CNB's Cash Collateral"). By permitting the SBG Entities to use CNB's Cash Collateral, such Cash Collateral has already been diverted and dissipated, and continues to be at a significant risk of loss. Specifically, all revenue being generated by the Restaurants is being dissipated and diverted to third parties who are not bound by the terms of the Loan Documents, putting CNB's Cash Collateral outside of CNB's reach.

57. By permitting the SBG Entities to take control of the Restaurants and their assets and operations, the value of CNB's Collateral and Cash Collateral is rapidly depleting, and is being diverted, dissipated, destroyed, allowed to deteriorate, and/or wasted.

58. Further, the Loan Parties' actions are a direct violation of Section 4(b) of the Security Agreement, which provides "[t]he Borrower shall not sell, assign (by operation of law or otherwise), license, lease or otherwise dispose of, or grant any option with respect to any of the Collateral."

59. The above transactions have deprived CNB of its Collateral, and traditional legal remedies of obtaining a judgment and collection are likely to be futile, or otherwise substantially

hindered. A receiver is in a unique position to take charge of Louisiana and the other Loan Parties, and should be appointed with appropriate powers in order to prevent the further loss off CNB's Collateral in the hands of the SBG Entities and the recovery of assets improperly transferred.

60.     Based on the above transactions, less drastic equitable remedies are inadequate, and the benefits of a receivership will outweigh any burden on the Defendants, as the Defendants have already permitted their operations to be taken over by a third party.

61.     A receiver will be able to assist in (i) sequestering all of CNB's Collateral (including CNB's Cash Collateral), to be held for the benefit of CNB; (ii) providing an accounting of CNB's Collateral and Cash Collateral from and after July 1, 2024; and (iii) terminating any agreements permitting the SBG Entities to continuing using CNB's Collateral.

62.     In addition, a receiver will be able to evaluate the possibility of filing a bankruptcy proceeding for one or more of the Loan Parties in order to take necessary action to avoid transfers of the assets of the Loan Parties as described above, including based on such transfers being preferential transfers under Section 547 of the United States Bankruptcy Code, which relief is not available to CNB or the Loan Parties outside of a bankruptcy proceeding.

WHEREFORE, City National Bank of Florida respectfully requests that the Court appoint a receiver to take control of Louisiana Apple, LLC, Mountain Apple, LLC, Oklahoma Apple, LLC, and Kentucky Apple, LLC, operate the business of the Loan Parties during the pendency of this action, take any actions normally reserved for management, and provide the receiver with the power, among other things, to file a bankruptcy proceeding for any of the Loan Parties and/or sell any or all assets of the Loan Parties in order to maximize the value thereof.

DATED: August 28, 2024.

Respectfully submitted,

**VENABLE LLP**
*Attorneys for Plaintiff*

 /s/ *Paul J. Battista*
Paul J. Battista, Esq.
Florida Bar No. 884162
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Phone: 305.349.2300
Email: pjbattista@Venable.com

- and -

Eric D. Jacobs, Esq.
Florida Bar No. 85992
100 N. Tampa Street, Suite 2600
Tampa, Florida 33602
Phone: 813.439.3100
Email: ejacobs@Venable.com

## VERIFICATION

The undersigned representative for City National Bank of Florida states under penalty of perjury that (i) he is employed as a Senior Vice President of City National Bank of Florida; (ii) he is fully familiar with the matters referred to in the foregoing Verified Complaint; (iii) he has reviewed the same; (iv) the facts stated therein have been assembled by authorized employees and counsel for City National Bank of Florida; and (v) the allegations therein are true and correct to the best of my knowledge, information, and belief.

CITY NATIONAL BANK OF FLORIDA

BY: _____
Name: Luis F. Moran
Its: Senior Vice President

STATE OF FLORIDA      )
                      ) SS
COUNTY OF MIAMI-DADE )

Sworn to and subscribed before me, by physical presence, this 27 day of August 2024, by LUIS F. MORAN, as Senior Vice President of CITY NATIONAL BANK OF FLORIDA, who is personally known to me and who took an oath.

[NOTARIAL SEAL]

CARLOS A. RIVAS
Notary Public - State of Florida
MY COMMISSION # HH 234714
Expires: June 24 2026

_____ Carlos A Rivas
Notary Public

13